IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-01271-EWN-BNB

PATRICK M. HAWKINSON,

Plaintiff,

v.

JAMES A. MONTOYA, and
JENELLE BORDEN, in their individual capacities,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before me on **Defendants' Motion to Dismiss Complaint for Lack of Jurisdiction, or in the Alternative for Failure to State a Claim** (the "Motion to Dismiss"), filed December 6, 2004.  Also before me is the plaintiff's **Second Verified Motion for Summary Judgment** (the "Motion for Summary Judgment"), filed November 18, 2004.  For the following reasons, I respectfully RECOMMEND that the defendants' Motion to Dismiss be GRANTED and that the action be DISMISSED in its entirety.  I further RECOMMEND that the plaintiff's Motion for Summary Judgment be DENIED.

### I.  STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes,

416 U.S. 232, 236 (1974).  A claim should be dismissed only where, without a doubt, the

plaintiff could prove no set of facts in support of his claims that would entitle him to relief.  Id.

## II.  BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the

Arkansas Valley Correctional Facility ("AVCF") in Crowley, Colorado.  The plaintiff filed his

Prisoner Complaint (the "Complaint") on June 21, 2004.  The Complaint alleges that in February

and March 2002, the plaintiff provided services to Opal N. Wilson.  *Complaint*, p. 3A, ¶ 1.  On

April 8, 2002, the plaintiff was arrested and sent to prison on a parole violation.  Id.  Because the

plaintiff was incarcerated, Wilson failed to pay him for his services.  Id.  Consequently, the

plaintiff filed two suits against Wilson in the El Paso County District Court.  Id. at ¶¶ 1-3.

The plaintiff filed his first suit--Case No. 02CV4252--against Wilson in December 2002.

*Motion to Dismiss*, Exhibit A.  He claimed $17,500 in actual damages pursuant to a contract with

Wilson dated February 15, 2002..  Id.  The plaintiff  alleged that he was not paid for

"work/repairs" he had performed on Wilson's property.  Id.  The plaintiff filed a Return of

Service in the 02CV4252 case which states that Wilson was served in Colorado Springs on

January 11, 2003.  Id. at Exhibit B.  The plaintiff moved for default judgment on February 10,

2003.  Id. at Exhibit C.  The court entered default judgment against Wilson on February 21,

2003, after receiving no response from her.  Id. at Exhibit D.

The plaintiff filed his second suit--Case No. 03CV858--against Wilson in March 2003.

Id. at Exhibit E.  The plaintiff alleged that Wilson owed him $52,500.00 for goods sold and

delivered.  Id.  The plaintiff filed a Return of Service in the 03CV858 case which states that

3

Wilson was served with copies of the Summons and Complaint on March 29, 2003.  Id. at

Exhibit F.  The plaintiff moved for default judgment on April 21, 2003.  Id. at Exhibit G.  The

court entered default judgment against Wilson on May 1, 2003, after receiving no response from

her.  Id. at Exhibit H.

The plaintiff subsequently caused liens to be placed on Wilson's property.  *Complaint*, p.

3b, ¶ 4.  Wilson died on October 21, 2003.  Id. at ¶ 5.  In November 2003, the plaintiff wrote to

Wilson's estate and demanded payment of the judgments.  Id. at ¶ 6.  After receiving no

response from the estate, the plaintiff retained an attorney who contacted the estate and

demanded payment on the judgments.  Id. at ¶¶ 6-7.

On February 13, 2004, R. Lynn Keener, Wilson's nephew and the personal representative

of Wilson's estate, moved in both cases for relief from the final judgments.  *Motion to Dismiss*,

Exhibit I.   Mr. Keener's motion states that the returns of service in each case were based on

fraud and misrepresentation.  Id.  Attached to each motion is the affidavit of defendant Montoya,

the DOC Deputy Inspector General.  Id.  Montoya's affidavit details his investigation and

findings concerning the returns of service.  Id.

Montoya attests that he initiated an investigation into the liens filed by the plaintiff after

he was contacted by Mr. Keener.  Id.  Montoya further attests that at the time the plaintiff alleged

to have performed services for Wilson, the plaintiff was under the supervision of the DOC at a

community corrections center located in Denver.  Id.  During that time, the plaintiff was

employed in Lakewood, Colorado, and his movements and leave were restricted to his

4

employment in Lakewood.  Id.  Finally, Montoya attests that the returns of service were sworn by inmates and are fraudulent.  Id.

On March 22, 2004, the El Paso County District Court issued orders in Case Nos. 02CV4252 and 03CV858 cases finding that the default judgments were obtained through a fraud on the court.  Id. at Exhibit J.  Based on its findings of fraud, the court relieved Wilson's estate of the default judgments.  Id.  On March 22, 2004, the plaintiff filed a motion to reconsider the court's order in the 03CV858 case.  Id. at Exhibit K.  The motion was denied.  Id.  The plaintiff filed a second motion for relief in that case, id. at Exhibit L, which was denied on July 23, 2004. Id. at Exhibit M.

Claims One and Two of the Complaint in this case allege that Montoya violated the plaintiff's constitutional rights by (1) interrogating the plaintiff regarding the judgments; (2) threatening the plaintiff if he did not release the judgments; (3) placing the plaintiff in punitive segregation; (4) seizing, reading, and keeping all of the plaintiff's legal documents; (5) "shopping" for a district attorney to press criminal charges against the plaintiff; (6) filing a fraudulent affidavit in the plaintiff's civil actions; (7) arranging to have the plaintiff transferred to a higher security prison; (8) taking away the plaintiff's phone privileges; (9) providing news agencies with slanderous and libelous information; (10) causing the plaintiff's incoming and outgoing mail to be seized, read and/or kept; (11) causing strife and conflict between the plaintiff and his pastor; and (12) adding ten classification points for "detainer/pending charges" to prevent the plaintiff from progressing through the prison system.  *Complaint*, p. 3c, 4-5.

Claim Three alleges that on April 15, 2004, defendant Borden, a member of the AVCF law library staff, refused to make copies of the plaintiff's Notice of Intent to Sue in an unspecified case.  Id. at p. 6.  On April 16, 2004, the plaintiff was in the law library researching and preparing documents for an appeal in his two civil cases.  Id.  Borden told the plaintiff to remove his documents from the typewriter and never to bring them into the law library again.  Id.  On or about May 14, 2004, Borden refused to copy plaintiff's Verified Statement of Case in an unspecified civil matter.  Id.  "Defendant Bordens [sic] actions listed above was [sic] related to civil actions in various courts and prevented and/or hindered Plaintiff from adequately defending - appealing his civil cases and therefore caused Plaintiff financial loss, emotional and mental stress."  Id.

The plaintiff seeks declaratory relief, actual damages, nominal damages, punitive damages, attorneys' fees, and "investigative fees."  Id. at p. 8.

### III.   ANALYSIS

### A.   Defendants' Motion to Dismiss

### 1.   Rooker-Feldman Doctrine

The defendants assert that the court lacks subject matter jurisdiction over this action because it is barred by the Rooker-Feldman doctrine.  The defendants' Rooker-Feldman argument presents a factual challenge to this court's subject matter jurisdiction.  Consequently, I do not presume the truthfulness of the factual allegations in the Amended Complaint.  Instead, I have wide discretion to allow affidavits and other documents to resolve any disputed jurisdictional facts.  Holt, 46 F.3d at 1003.

The Rooker-Feldman doctrine is derived from 28 U.S.C. § 1257 which provides that federal review of state court judgments can be obtained only in the United States Supreme Court. Kenmen Engineering v. City of Union, 314 F.3d 468, 473 (10th Cir. 2002). The Rooker-Feldman doctrine "prohibits a lower federal court from considering claims actually decided by a state court and claims 'inextricably intertwined' with a prior state-court judgment." Id. (internal quotations and citations omitted).

In Pennzoil Co. v. Texaco, Inc., 481 U.S. 1 (1987), the Supreme Court explained that a federal claim is inextricably intertwined with a state court judgment if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." Id. at 25 (Marshall, J., concurring). "Although it is difficult to formulate a foolproof test" to determine when a federal plaintiff's claims are inextricably intertwined with a prior state court judgment, the Tenth Circuit Court of Appeals has stated that "we approach the question by asking whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress. If it did, Rooker-Feldman deprives the federal court of [subject matter] jurisdiction." Kenmen, 314 F.3d at 476 (footnote omitted).

The allegations of the Complaint demonstrate that dismissal of the judgments against Wilson caused the injury for which the plaintiff seeks redress in this case. In the section of the

Complaint entitled "Nature of the Case," the plaintiff details the defendants' alleged

wrongdoings.  The final two paragraphs of this section state:

> Therefore, because of both Defendant's [sic] colective [sic]
> actions, to wit: Defendant Monoyas [sic] seizing, reading and
> keeping Plaintiffs [sic] entire case files - all legal documents,
> attorney/client communications, court orders/letters/judgments,
> etc. and Defendant Bordens [sic] prohibiting Plaintiff from
> researching on how to file an [sic] civil appeal and threatened
> Plaintiff with write-up(s) if he retuned [sic] to the law library with
> his civil matters case 02CV4252 and 03CV858 has effectively
> prevented, hindered and/or obstructed plaintiffs [sic] right to
> defend, appeal, object, etc. and caused the plaintiffs [sic]
> judgments to be dismissed.

> Finally, inspite [sic] of Defendant Montoyas [sic] and Bordens
> [sic] actions Plaintiff still attempted to file numerous appropriate
> motions, objections, notices, etc. to defend his civil judgments.
> However, Plaintiffs [sic] actions were in vain because he could not
> submit documents, evidence, legal authorities, case law, etc. to
> defend, object, prosecute or appeal these civil actions because of
> the Defendant(s) [sic] actions.  In the end Plaintiff lost his
> judgments because of Defendant Montoyas [sic] and or Bordens
> [sic] Actions descibed [sic] above.

*Complaint*, p. 3d, ¶¶ 22-23.

Claims One and Two reiterate the alleged wrongdoings of defendant Montoya.  The final

paragraph of Claim One states:

> The above actions of Defendant Montoya completely prevented
> Plaintiff from properly or adequately defending or prosecuting his
> civil case/judgments.  Therefore on March 22, 2004 Plaintiffs [sic]
> judgments were dismissed causing plaintiff financial loss,
> emotional and mental stress.

Id. at p. 4.

The final paragraph of Claim Two states:

> Defendant Montoyas [sic] actions listed above was [sic] related to
> and because of Plaintiffs [sic] civil cases/judgments 02CV4252
> and 03CV858 and caused Plaintiff financial loss, emotional and
> mental stress.

Id. at p. 5.

These statements make clear that the state court's dismissal of the judgments against

Wilson constitute the injury for which the plaintiff is seeking redress in this case.  Consequently,

these claims are inextricably intertwined with the state court judgment.

The plaintiff argues that the Rooker-Feldman doctrine does not bar his claims against

Montoya and Borden because he was unable to present these claims in the state court.  *Plaintiffs'*

[sic] *Verified Response to Def. Mot. to Dismiss*, p. 9.  However, the  Rooker-Feldman doctrine

precludes unraised claims--whether or not the party could have raised them--if they are

inextricably intertwined with the state court judgment. Kenmen, 314 F.3d at 478.  Moreover, in

Case No. 03CV858, the plaintiff sought relief from the judgment on the basis that Mr.

Montoya's affidavit was fraudulent.  *Motion to Dismiss*, Exhibit L (citations omitted).  The

plaintiff complained that

> he was previously OBSTRUCTED and HINDERED by actions
> beyond his control, such as (1) having his entire case file and all
> legal documents relating to this very case being seized and kept by
> Mr. Montoya; (2) being placed in segregation for (30) days with no
> disciplinary charges filed, this being done on Mr. Montoya's
> authority; (3) being transferred to three different facility's [sic] in
> the last 2 to 3 months, this also being done by Mr. Montoya's
> urging; and (4) Plaintiff's law books being seized and kept and
> finally Plaintiff had to order and request copies from third parties
> to assemble attached evidence because the facility law library staff
> refused to photocopy anything related to this civil action and
> threatened Plaintiff with disciplinary charges if he attempted to use
> the law library to perfect this or any other type of appeal.

Id.  The state court considered these accusations and upheld its previous ruling that the plaintiff

had not properly served Wilson.  Id. at Exhibit M.  Thus, the El Paso County District Court has

considered and rejected the same arguments asserted by the plaintiff in this court.

The Rooker-Feldman doctrine prohibits utilization of this court to appeal the rulings of

the El Paso County District Court.  Therefore, the Rooker-Feldman doctrine bars both claims

against defendant Montoya, and Rooker-Feldman also bars the claim against defendant Borden

insofar as that claim alleges that Borden prevented the plaintiff from using the law library to

work on the cases against Wilson.  I respectfully RECOMMEND that the Motion be GRANTED

to the extent it seeks dismissal of these claims as barred by the Rooker-Feldman doctrine.

## 2.  Denial of Access to the Courts

In addition to alleging that defendant Borden prevented the plaintiff from using the law

library to work on his cases against Wilson, Claim Three appears to allege that Borden denied

him access to the courts in other civil actions.  *Complaint*, p. 6.  Based on the evidence before

me, claims alleging denial of access to the courts in matters other than the Wilson cases are not

barred by the Rooker-Feldman doctrine.  However, an inmate alleging denial of access to the

courts must allege an actual injury.  Lewis v. Casey, 518 U.S. 343, 349 (1996).  To establish

actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's

efforts to pursue a nonfrivolous claim."  Id. at 356.  Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th

Cir. 1996) (citing Lewis, 518 U.S. at 351).

Here, the plaintiff states that defendant Borden refused to make copies of a Notice of

Intent to Sue in an unspecified case, *Complaint*, p. 6, and to make copies of a Verified Statement

of Case in another unspecified case.  <u>Id.</u>  The plaintiff concludes that "Defendant Bordens [sic]

actions listed above was [sic] related to civil actions in various courts and prevented and/or

hindered Plaintiff from adequately defending - appealing his civil cases and therefore caused

Plaintiff financial loss, emotional and mental stress."  <u>Id.</u>  The plaintiff has failed to allege that

Borden's actions caused him an actual injury.  I respectfully RECOMMEND that Claim Three

be DISMISSED for failure to state a claim upon which relief can be granted insofar as it alleges

that defendant Borden denied the plaintiff access to the courts in cases other those involving

Wilson.

**B.  Plaintiff's Motion for Summary Judgment**

Because I find that the plaintiff's claims are barred by the Rooker-Feldman doctrine to

the extent they are inextricably intertwined with the state court judgment, and because I find that

the remaining claims do not state a claim upon which relief can be granted, I respectfully

RECOMMEND that the plaintiff's Second Verified Motion for Summary Judgment be

DENIED.

**IV.   CONCLUSION**

I respectfully RECOMMEND that Defendants' Motion to Dismiss Complaint for Lack of

Jurisdiction, or in the Alternative for Failure to State a Claim be GRANTED and that this action

be dismissed in its entirety.

I further RECOMMEND that the plaintiff's Second Verified Motion for Summary

Judgment be DENIED.

11

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated August 24, 2005.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge