IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–01271–EWN–BNB

PATRICK M. HAWKINSON,

    Plaintiff,

v.

JAMES A. MONTOYA,
JENELLE BORDEN,
in their individual and official capacities,

    Defendants.

## ORDER CONCERNING MAGISTRATE JUDGE'S RECOMMENDATION

Plaintiff is a state prisoner in the custody of the Colorado Department of Corrections (CDOC). He brings claims for alleged violation of his federal civil rights, citing, *inter alia*, 42 U.S.C. § 1983. Defendant James A. Montoya is a CDOC employee who works as an investigator in the CODC's Office of Inspector General. Defendant Jenelle Borden is on the library staff at one of CDOC's facilities. The assigned magistrate judge has recommended dismissal of two claims for lack of subject matter jurisdiction, reasoning that Plaintiff is impermissibly asking this court to review the merits of a state court determination, in violation of the principles articulated by the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The magistrate judge has recommended dismissal of the third claim (against Defendant Borden only) for failure to state a claim upon which relief can be granted. Plaintiff has objected.

The standard of review which this court employs in considering a magistrate judge's submissions depends upon whether the motion before the court and magistrate judge is viewed as dispositive or non-dispositive. For dispositive motions, a district court assessing a magistrate judge's findings of fact and recommendations for disposition must make a "de novo determination of those portions of the [recommendation] . . . to which objection is made." *See* 28 U.S.C.A. § 636(b)(1) (West 1993); Fed. R. Civ. P. 72(b). "When conducting de novo review, the district court makes its own determinations of disputed issues and does not decide whether the magistrate's proposed findings are clearly erroneous." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989).

The underlying facts are disputed. Plaintiff claims that, before his current imprisonment, he performed services for one Opal Wilson, a woman in her nineties who lived in Colorado Springs, Colorado. She did not pay for the services, so Plaintiff sued her in state court — twice. Ms. Wilson did not respond to either lawsuit. Plaintiff, having filed Returns of Service purporting to demonstrate personal service on Ms. Wilson in each case, sought and obtained default judgments against her and caused judgment liens to be placed on her property.

After Ms. Wilson passed away, Plaintiff persisted in trying to collect his judgments from her estate. Her nephew and personal representative evidently became suspicious and contacted Defendant Montoya. Montoya did an investigation and ultimately filed an affidavit in support of the estate's motions to set aside the default judgments. The affidavit first recited that, at the time Plaintiff supposedly performed services for Ms. Wilson in Colorado Springs, he was residing at a CDOC community corrections facility in Denver. His movements were restricted to travel between the community corrections facility and his place of employment at a Travelodge in

Lakewood. He was never authorized to work in Colorado Springs. Montoya's affidavit further recited that the Returns of Service filed by Plaintiff appeared fraudulent because (1) one was signed by an inmate who was incarcerated on the date of purported service and (2) circumstances and information surrounding the other supported an inference that Plaintiff had persuaded another inmate to get that inmate's signature notarized on the inmate's statement in a grievance proceeding (with the notary's signature appearing on a page separate from the inmate's signature) and had then attached the notary's signature to a Return of Service containing the forged or fictional signature "Daniel Ingraham." Based on this information, the state court set aside the default judgments for fraud on the court.

According to Plaintiff, however, Defendant Montoya did more than investigate and summarize the results of his investigation in an affidavit. During the investigation, Montoya allegedly visited Plaintiff (who was by then re-incarcerated) and threatened to place him in punitive segregation if Plaintiff did not relinquish the judgments and liens. Montoya then allegedly followed through by placing Plaintiff in punitive segregation (with no disciplinary charges) for thirty days, by transferring him to a higher security facility, by preventing Plaintiff from communicating with his attorney, and by adding classification points which affected Plaintiff's privileges in the prison system. Montoya also allegedly seized Plaintiff's legal materials and caused the seizure of Plaintiff's law books. Finally, he allegedly filed false criminal charges based on Plaintiff's activities in the collection cases against Ms. Wilson, filed a false affidavit to support setting aside Plaintiff's judgments, and defamed Plaintiff in the media.

Defendant Borden allegedly furthered Montoya's efforts to interfere with Plaintiff's right to petition the courts by taking two actions. First, she allegedly refused Plaintiff's request to copy

his notice of intent to sue Montoya, a notice required by the Colorado Governmental Immunity Act.  Second, as Plaintiff was researching how to appeal the state court's decision to set aside his default judgments and typing the necessary documents, Borden told him to take his typewriter from the library and never bring it back.

Although Defendants advanced several alternate grounds for their motion to dismiss, the magistrate judge thought that a single ground — the *Rooker–Feldman* doctrine — sufficed.  He therefore did not pass on the alternate grounds.  The court finds the magistrate judge's interpretation of the *Rooker–Feldman* doctrine to be flawed.  Thus, it rejects the recommendation and denies the motion to dismiss, without prejudice to renewal of the motion (or a similar summary judgment motion) based on any alternate ground not covered in this order.

The *Rooker–Feldman* doctrine is easy to state but treacherous to apply.  The doctrine has statutory roots in 28 U.S.C. § 1257, which states, "Final judgments or decrees rendered by the highest court of a State . . .may be reviewed by the [United States] Supreme Court" where a federal question has been raised in the state proceedings.  The statute has been interpreted to mean that "federal review of state court judgments can be obtained only in the United States Supreme Court." *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998) (citing *Feldman*, 460 U.S. at 476.)   As a result, the *Rooker-Feldman* doctrine prohibits a lower federal court from considering claims actually decided by a state court, *Rooker*, 263 U.S. at 415-16, and claims "inextricably intertwined" with a prior state-court judgment.  *Feldman*, 460 U.S. at 483 n. 16.  The *Rooker-Feldman* doctrine thus precludes "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States

district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

As the Tenth Circuit has recognized, the "inextricably intertwined" language has proven problematic:

> Although it is difficult to formulate a foolproof test, in general we must ask whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. . . . Three related concepts — injury, causation, and redressability— inform this analysis. . . . In other words, we approach the question by asking whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress.  If it did, Rooker-Feldman deprives the federal court of jurisdiction.

*Kenmen Engineering v. City of Union*, 316 F.3d 468, 476 (10th Cir. 2002).  Applying *Kenmen Engineering*, the magistrate judge reasoned that the state court's setting aside the default judgments against Ms. Wilson's estate was the cause of the injury which Plaintiff sustained and that Plaintiff's claims against Montoya and part of his claims against Borden are thus barred by the *Rooker–Feldman* doctrine.

There are two problems with this analysis.  First, it is simply not clear that the only damages which Plaintiff seeks are those occasioned when the state court's ruling took away default judgments which he claims are entirely proper.  As the court has already noted, the complaint alleges that Montoya placed Plaintiff in punitive segregation, without filing disciplinary charges, for thirty days, transferred him to a higher security facility, and added classification points which affected Plaintiff's privileges in the prison system.  Montoya also allegedly defamed Plaintiff and maliciously caused the filing of criminal charges against him.  While the court is aware that these allegations might be subject to attack on other grounds, it does not appear that

the claims or consequent injuries proceed from, or have any causal connection with, the state court's order.

The larger problem, however, is that the magistrate judge's use of causation as a basis for applying the *Rooker–Feldman* doctrine is simply too narrow and mechanical. It is true that the state court's setting aside the default judgments can be treated as a "but for" cause of the bulk of Plaintiff's injuries, but that is not the end of the inquiry. In *Kenman Engineering*, the Tenth Circuit cautioned against relying solely on "but for" causation in applying the *Rooker–Feldman* doctrine:

> Actual causation alone will not suffice, and thus we may not simply apply a "but-for" test. For example, in Kiowa Indian Tribe [of Oklahoma v. Hoover, 150 F.3d 1163 (10th Cir. 1998], we held that the Tribe's section 1983 challenge to "the use of state court processes to seize tribal assets in satisfaction of state court judgments" was not "inextricably intertwined" with the underlying state-court judgment, despite the fact that the satisfaction-of-judgment procedures would not have been at issue but for the underlying state-court judgment.

*Kenman Engineering*, 314 F.3d at 476 n. 7.

Here, the court simply cannot see how Plaintiff is asking the court to review the merits of, or the procedures underlying, the state court's decision or calling for the court to invalidate any part of the ruling. He sues two strangers to the state court proceeding, one of whom supplied evidence which appears to have been critical to the state court's ruling, but he does not challenge the ruling itself. To the contrary, he claims only that Montoya and/or Borden took unconstitutional actions — seizure of legal materials and law books; interference with attorney–client communications; and interference with use of the law library, for example — which deprived him of his right of access to the courts and thus caused the state court to set aside

the default judgments.  The correctness of this ruling is simply not in question, only Defendants' actions leading to its issuance.  In this sense, the court believes that Plaintiff's claims are "'separable from and collateral to' the merits of the state-court judgment."  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 21 (1987) (Brennan, J., concurring).  It is not a case where "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."  *Id.*, at 25 (Marshall, J., concurring).  In the court's view, the *Rooker–Feldman* doctrine does not apply to this case.

Interpreting the complaint against Defendant Borden as based partly on actions depriving Plaintiff of his right to have access to the state court system for the purpose of defending against the motions to set aside the default judgments, the magistrate judge incorrectly thought such claims barred by the *Rooker–Feldman* doctrine.  He also thought that Plaintiff was also claiming that Borden deprived him of his right to access in other cases.  The magistrate judge thus recommends that those other claims be dismissed for failure to allege an element vital to such a claim — actual damages.  Although Plaintiff has not responded to this part of the recommendation, the court does not interpret his complaint as did the magistrate judge.  It appears that all allegations against Borden relate to actions which restricted Plaintiff's access to the court where the default judgments were pending.  In any event, this is a matter which can be clarified in further proceedings.

For the reasons recited herein, it is

**ORDERED** as follows:

1. The magistrate judge's recommendation is ACCEPTED in part and REJECTED in part.

2. Defendants' motion to dismiss of lack of subject matter jurisdiction (#41) is DENIED.

3. Plaintiff's motion for summary judgment (#31) is DENIED without discussion as frivolous.

4. Plaintiff's objection (#82) to the magistrate judge's ruling (#79)on the motion to strike is OVERRULED as equally frivolous, and the magistrate judge's order will stand as the order of this court.

5. Plaintiff's motion to amend the complaint (#88) and Defendants' motion to strike the motion to amend (#93) are both DENIED as moot.

6. The case is hereby RECOMMITTED to the magistrate judge for further proceedings.

Dated this 16th day of March, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge