IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-01271-EWN-BNB

PATRICK M. HAWKINSON,

Plaintiff,

v.

JAMES A. MONTOYA,
R. LYNN KEENER,
ROBERT SCRANTON, in their individual and official capacities, and
ESTATE OF OPAL WILSON,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on defendants Keener, Scranton, and the Estate of Opal Wilson's **Motion for Judgment on the Pleadings** [Doc. #222, filed 10/31/06] (the "Motion"). For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

### I.  STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

A motion for judgment on the pleadings is reviewed under the same standard of review applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). McHenry v. Utah Valley Hosp., 927 F.2d 1125, 1126 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). A claim should be dismissed only where, without a doubt, the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. Id.

In ruling on a motion for judgment on the pleadings, I may treat the motion as a Rule 56 summary judgment motion when matters outside the pleadings are presented to and not excluded by me, and all parties have been given a reasonable opportunity to respond as provided in Rule 56. Fed.R.Civ.P. 12(c). The defendants have attached affidavits to their Motion. The plaintiff states that he "incorporates" into his response the motion for summary judgment, with supporting evidence, that he filed against defendant Montoya on August 14, 2006. *Plaintiff's Response to Amended Defendant's* [sic] *Motion for Judgment on the Pleadings* [Doc. 232, filed 11/16/06], p.

7. Because I do not refer to the parties' proffered evidence in my analysis of the Motion, I have not converted the Motion into one for summary judgment.

In addition, the defendants assert numerous statements of fact in their Motion. The statements are not supported by the record, and I do not consider them in my analysis of the Motion.

## II.  BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Arkansas Valley Correctional Facility in Crowley, Colorado. The plaintiff filed his "First Amended and Supplemented Prisoner Complaint" (the "Complaint") on June 28, 2006 [Doc. #143]. The Complaint alleges the following:

1. In February and March 2002, the plaintiff provided services and sold goods to Opal Wilson. *Complaint*, ¶ 8. In return, Ms. Wilson agreed to pay the plaintiff $52,360.68 on or before April 15, 2002. Id.

2. On April 7, 2002, the plaintiff was arrested and sent to prison on a parole violation. Id. at ¶ 8. Ms. Wilson then refused to pay him for his services. Id. Consequently, the plaintiff filed two suits against Ms. Wilson in the El Paso County District Court. Id.

3. The plaintiff filed his first suit--Case No. 02CV4252--against Ms. Wilson for breach of contract for services rendered. Id. The plaintiff filed his second suit--Case No. 03CV858--against Ms. Wilson for breach of contract for goods sold and delivered. Id.

4. The El Paso County District Court entered default judgments against Ms. Wilson in both cases for a total of $70,000, plus interest and costs. Id. at ¶ 9. The plaintiff subsequently caused liens to be placed on Ms. Wilson's property. Id.

5. Ms. Wilson ignored the judgment and the liens. Id. at ¶ 10.

6. Ms. Wilson died in October 2003. Id. In November 2003, defendant R. Lynn Keener was appointed as representative for the Estate of Opal Wilson (the "Estate"). Id.

7. On January 14, 2004, the plaintiff's attorney contacted the Estate through Lynn Keener and the attorney for the Estate, Robert Scranton, demanding full payment of the judgment. Id. at ¶ 11. The plaintiff did not receive a response. Id. at ¶ 12.

8. On January 26, 2004, Keener (and possibly Scranton) contacted defendant Montoya, an investigator for the DOC, and solicited his help. Id. at ¶¶ 2, 13. Montoya agreed to help the defendants "prevent inmate Hawkinson from recieving [sic] one dime from the estate." Id. at ¶ 14.

9. On January 26, 2004, Montoya was provided documents from Keener, Scranton, the El Paso County District Court, and the El Paso County Clerk and Recorder's Office. The documents confirmed the existence of the two civil suits, the judgments, and the liens. Id. at ¶ 15.

10. Montoya drove to the prison and interrogated the plaintiff regarding the judgment and the liens. Id. at ¶ 16. Montoya threatened the plaintiff with punitive segregation if he did not sign over the liens and dismiss the judgments. Id. at ¶ 17. Montoya placed the plaintiff in punitive segregation for thirty days; seized all of the plaintiff's legal documents and law books; transferred plaintiff to a higher security facility which caused him to lose his job and his privileges;

added ten classification points to the plaintiff's custody rating; caused the plaintiff's relationship with his pastor to end; contacted the Denver Post with misinformation; shopped for a District Attorney to file criminal charges against the plaintiff; and shut off the plaintiff's telephone privileges to prevent the plaintiff from communicating with his attorneys. Id. at ¶ 19.

11. Montoya submitted "an outright false and perjurious" affidavit to Scranton. Id. at ¶ 19F.

12. On February 13, 2004, Keener moved in both cases for relief from the final judgments. Id. at ¶ 21. Keener and Scranton attached Montoya's affidavit to the motions. Id. at ¶¶ 19F, 21.

13. Montoya amended his affidavit on March 19, 2004, deleting all grounds for dismissal of the judgment in case 03CV858. Montoya submitted the amended affidavit to Scranton. Scranton hid the amended affidavit from the plaintiff for more than 16 months. Id. at ¶¶ 19F, 23.

14. The defendants' actions prevented the plaintiff from defending the motions for relief from the final judgments. Id. at ¶ 22.

15. On March 22, 2004, the El Paso County District Court relieved Ms. Wilson's estate of the default judgments, costing the plaintiff more than $70,000. Id. at ¶¶ 22, 23. Scranton did not disclose the amended affidavit to the court prior to the issuance of its order dismissing the judgments. Id. at ¶ 23.

The Complaint asserts two claims for relief. Claim One alleges that Montoya's "actions are act(s) of retaliation for Plaintiff's civil court actions and civil court judgments totalling [sic] $70,000, against Opal Wilson, in violation of Plaintiff's First Amendment right of access to the

court." Id. at ¶ 26. Claim Two alleges that Keener, Scranton, and the Estate conspired with Montoya "in retaliation for Plaintiff's civil court actions and civil court judgments totalling [sic] $70,000, against Opal Wilson, in violation of Plaintiff's First Amendment right of access to the court." Id. at ¶ 27.

The plaintiff seeks declaratory relief, monetary damages, costs, and attorneys' fees. Id. at p. 9.

### III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.[1]

Claim Two alleges that Keener, Scranton, and the Estate conspired with Montoya "in retaliation for Plaintiff's civil court actions and civil court judgments totalling [sic] $70,000, against Opal Wilson, in violation of Plaintiff's First Amendment right of access to the court." Liberally construed, Claim Two alleges that the defendants conspired with Montoya to retaliate against the plaintiff and to deny him access to the courts in violation of his constitutional rights.

---

[1] In addition to asserting jurisdiction under 42 U.S.C. § 1983, the plaintiff asserts jurisdiction under a plethora of statutes. *Complaint*, p. 2, ¶ 7. The plaintiff provides no explanation or justification to support jurisdiction under these additional statutes. Accordingly, I address jurisdiction only pursuant to 42 U.S.C. § 1983.

The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). An inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Id. at 356. Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).

State officials have an affirmative obligation to provide assistance to inmates only for direct appeals, habeas corpus petitions, and civil rights actions. The state does not have an affirmative duty to assist an inmate in other civil matters, such as the plaintiff's lawsuits against Ms. Wilson. However, "the state may not erect barriers that impede the right of access of incarcerated persons" when pursuing other civil matters. Carper v. DeLand, 54 F.3d 613, 616-17 (10th Cir. 1995) (internal quotations omitted).

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts." Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." Id. at 948. An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson v. Shanks, 149 F.3d 1140,1144 (10th Cir. 1998). Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted). "An

7

inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

Section 1983 limits liability to the actions of the government and its agents. Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1446-47 (10th Cir. 1995). Defendants Keener, Scranton, and the Estate of Opal Wilson (the "defendants") seek dismissal of the claim against them on the basis that they are not state actors.

The Tenth Circuit Court of Appeals has recognized a variety of tests to determine whether particular conduct constitutes state action. Id. at 1447. The test most applicable to the plaintiff's allegations of conspiracy is the "joint action" test. Id. at 1453-54. A private citizen can be liable for state action where the "private party is a willful participant in joint action with the State or its agents." Id. at 1453 (internal quotations omitted). The focus of the inquiry is "whether state officials and private parties have acted in concert in effecting a particular deprivation of

constitutional rights." Id.  The state and private actors "must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action."  Id. at 1455.  Mere acquiescence in the actions of another are not sufficient to impose liability.  Id. at 1453.

In addition, the Tenth Circuit has held:

> When a plaintiff in a § 1983 action attempts to assert the necessary state action by implicating state officials . . . in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.

Hunt v. Bennett, 17 F.3d 1263, 1268 (10th Cir. 1994).

The Complaint asserts, and the defendants do not dispute, that defendant Montoya is a state actor.  The Complaint contains the following allegations regarding conspiratorial actions of the defendants and Montoya:

1. On January 26, 2004, Keener, the Estate of Opal Wilson, and possibly Scranton contacted Montoya complaining that the Estate had to pay off two court-ordered judgments to an inmate.  They solicited help from Montoya to prevent the Estate and Keener from having to pay the judgments.  *Complaint*, ¶ 13.

2. Montoya agreed to help Keener, the Estate, and Scranton to "prevent inmate Hawkinson from recieving [sic] one dime from the estate."  Id. at ¶ 14.

3. On January 26, 2004, Montoya was provided documents from Keener, Scranton, the El Paso County District Court, and the El Paso County Clerk and Recorder's Office.  The documents confirmed the existence of the two civil suits, the judgments, and the liens.  Id. at ¶ 15.

     4. Montoya submitted "an outright false and perjurious" affidavit to Scranton. Id. at ¶ 19F.

     5. On February 13, 2004, Keener moved in both cases for relief from the final judgments. Id. at ¶ 21. Keener and Scranton attached Montoya's affidavit to the motions. Id. at ¶¶ 19F, 21.

     6. Montoya amended his affidavit on March 19, 2004, deleting all grounds for dismissal of the judgment in case 03CV858. Montoya submitted the amended affidavit to Scranton. Scranton hid the amended affidavit from the plaintiff for more than 16 months. Id. at ¶¶ 19F, 21, ¶ 23. Scranton did not disclose the amended affidavit to the court prior to the issuance of its March 22, 2004, order dismissing the judgments. Id. at ¶ 23.

     7. The defendants all maintained contact regarding the actions of Montoya, including communication by phone, facsimile, and email. Id. at ¶ 20.

The allegations against defendants Keener and the Estate do not tend to show agreement and concerted action with Montoya to deprive the plaintiff of his constitutional rights. At most, the plaintiff has alleged that Montoya and Keener shared a common goal to overturn the default judgments. I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of defendants Keener and the Estate of Opal Wilson on the basis that the Complaint fails to allege that they are state actors.

As to defendant Scranton, the Complaint does not allege he had any knowledge that Montoya's initial affidavit was "false and perjurious." The Complaint does allege, however, that Scranton had in his possession an amended affidavit which no longer contained the statements that provided the grounds for dismissal of the judgment in case 03CV858, and that he did not

disclose the amended affidavit to the plaintiff or to the court. These facts tend to show agreement and concerted action with Montoya to keep from the court information favorable to the plaintiff. Accordingly, Claim Two sufficiently alleges that Scranton acted in concert with Montoya with the goal of retaliating against the plaintiff and impeding his right to access the court. I respectfully RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of defendant Scranton on the basis that the Complaint fails to allege he is a state actor.

The defendants also argue that the plaintiff's claim must be dismissed under 28 U.S.C. § 1915 as factually frivolous. The defendants assert that the plaintiff has "failed to allege any facts that would lead a fact finder to determine that the [defendants] acted in a conspiracy with Inspector Montoya to violate his Civil Rights." *Motion*, ¶ 12.

The plaintiff has been granted leave to proceed without payment of an initial partial filing fee pursuant to the federal *in forma pauperis* statute, 28 U.S.C. § 1915. Subsection (e)(2)(B) of § 1915 requires a court to dismiss sua sponte an action at any time if the action is frivolous. An action is frivolous when "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Section 1915(e)(2)(B) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Id. at 327. "Clearly baseless factual contentions are those that are 'fantastic or delusional.'" Shabazz v. Askins, 980 F.2d 1333, 1334 (10th Cir. 1992) (quoting Neitzke, 490 U.S. at 327-28).

As analyzed above, the plaintiff's factual allegations against defendant Scranton are not clearly baseless. I respectfully RECOMMEND that the Motion be DENIED to the extent it seeks dismissal of the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) .

## IV.   CONCLUSION

I respectfully RECOMMEND that the Motion for Judgment on the Pleadings be GRANTED IN PART and DENIED IN PART as follows:

GRANTED to the extent it seeks dismissal of the claims against defendants R. Lynn Keener and the Estate of Opal Wilson, and

DENIED insofar as is seeks dismissal of defendant Robert Scranton.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 2, 2007.

BY THE COURT:

                                                                                       s/ Boyd N. Boland
                                                                                      United States Magistrate Judge