IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-01271-EWN-BNB

PATRICK M. HAWKINSON,

Plaintiff,

v.

JAMES A. MONTOYA,
R. LYNN KEENER,
ROBERT SCRANTON, in their individual and official capacities, and
ESTATE OF OPAL WILSON,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on **Defendant Montoya's Motion to Dismiss First Amended and Supplemented Prisoner Complaint** [Doc. #147, filed 6/30/06] (the "Motion"). For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

### I.  STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its

> task is necessarily a limited one. The issue is not whether a plaintiff
> will ultimately prevail but whether the claimant is entitled to offer
> evidence to support the claims. Indeed it may appear on the face of
> the pleadings that a recovery is very remote and unlikely but that is
> not the test.

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). A claim should be dismissed only where, without a doubt, the plaintiff could prove no set of facts in support of his claims that would entitle him to relief. Id.

To the extent the plaintiff requests any type of relief from the Court in his response to the Motion, I do not address the requests. "A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper." D.C.COLO.LCivR 7.2C.

## II. BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Arkansas Valley Correctional Facility in Crowley, Colorado. The plaintiff filed his "First Amended and Supplemented Prisoner Complaint" (the "Complaint") on June 28, 2006 [Doc. #143]. The Complaint alleges the following:

1. In February and March 2002, the plaintiff provided services and sold goods to Opal Wilson. *Complaint*, p. 2, ¶ 8. In return, Ms. Wilson agreed to pay the plaintiff $52,360.68 on or before April 15, 2002. Id.

2. On April 7, 2002, the plaintiff was arrested and sent to prison on a parole violation. Id. at pp. 2-3, ¶ 8. Ms. Wilson then refused to pay him for his services. Id. at p. 3, ¶ 8. Consequently, the plaintiff filed two suits against Ms. Wilson in the El Paso County District Court. Id..

3

3. The plaintiff filed his first suit--Case No. 02CV4252--against Ms. Wilson for breach of contract for services rendered. Id. The plaintiff filed his second suit--Case No. 03CV858-- against Ms. Wilson for breach of contract for goods sold and delivered. Id.

4. The El Paso County District Court entered default judgments against Ms. Wilson in both cases for a total of $70,000, plus interest and costs. Id. at ¶ 9. The plaintiff subsequently caused liens to be placed on Ms. Wilson's property. Id.

5. Ms. Wilson ignored the judgment and the liens. Id. at ¶ 10.

6. Ms. Wilson died in October 2003. Id. In November 2003, defendant R. Lynn Keener was appointed as representative for the Estate of Opal Wilson. Id.

7. On January 14, 2004, the plaintiff's attorney contacted the Estate of Opal Wilson through Lynn Keener and the attorney for the Estate, Robert Scranton, demanding full payment of the judgment. Id. at ¶ 11. The plaintiff did not receive a response. Id. at p. 4, ¶ 12.

8. On January 26, 2004, Keener (and possibly Scranton) contacted defendant Montoya, an investigator for the DOC, and solicited his help. Id. at p. 1, ¶ 2 and p. 4,¶ 13. Montoya agreed to help the defendants "prevent inmate Hawkinson from recieving [sic] one dime from the estate." Id. at ¶ 14.

9. Montoya drove to the prison and interrogated the plaintiff regarding the judgment and the liens. Id. at ¶ 16. Montoya threatened the plaintiff with punitive segregation if he did not sign over the liens and dismiss the judgments. Id. at p. 5, ¶ 17. Montoya placed the plaintiff in punitive segregation for thirty days; seized all of the plaintiff's legal documents and law books; transferred plaintiff to a higher security facility which caused him to lose his job and his privileges;

added ten classification points to the plaintiff's custody rating; submitted a false affidavit in the plaintiff's civil cases; caused the plaintiff's relationship with his pastor to end; contacted the Denver Post with misinformation; shopped for a District Attorney to file criminal charges against the plaintiff; and shut off the plaintiff's telephone privileges to prevent the plaintiff from communicating with his attorneys. Id. at pp. 5-6, ¶ 19.

10. On February 13, 2004, Keener moved in both cases for relief from the final judgments. Id. at p. 6, ¶ 21. Keener attached Montoya's affidavit to the motions. Id.

11. The defendants' actions prevented the plaintiff from defending the motions. Id. at ¶ 22. The El Paso County District Court relieved Ms. Wilson's estate of the default judgments, costing the plaintiff more than $70,000. Id.

12. The plaintiff's telephone privileges remain suspended, his legal documents and books have not been returned, and he remains at a higher level security facility. Id. p. 7, ¶ 24.

The Complaint asserts two claims for relief. Claim One alleges that Montoya's "actions are act(s) of retaliation for Plaintiff's civil court actions and civil court judgments totalling [sic] $70,000, against Opal Wilson, in violation of Plaintiff's First Amendment right of access to the court." Id. at ¶ 26. Claim Two alleges that Keener, Scranton, and the Estate of Opal Wilson conspired with Montoya "in retaliation for Plaintiff's civil court actions and civil court judgments totalling [sic] $70,000, against Opal Wilson, in violation of Plaintiff's First Amendment right of access to the court." Id. at p. 8, ¶ 27.

The plaintiff seeks declaratory relief, "compensatory" damages, nominal damages, punitive damages, and costs and attorneys' fees. Id. at p. 9.

5

## III. ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A. Official Capacity

Montoya asserts that the claims against him in his official capacity must be dismissed based on Eleventh Amendment immunity. *Motion*, p. 12. Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Montoya's assertion of Eleventh Amendment immunity is a facial challenge to the Complaint's allegations. Therefore, I accept the allegations of the Complaint as true. Holt, 46 F.3d at 1003.

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst, 465 U.S. at 102-03,105-06. Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The plaintiff is suing the defendants in both their official and individual capacities. *Complaint*, p. 2, ¶ 6. Defendant Montoya is employed by the Colorado Department of Corrections (the "DOC"). The DOC is an agency or subdivision of the State of Colorado.

Consequently, a suit against Montoya in his official capacity is a suit against the state. Therefore, I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of all claims against Montoya in his official capacities for retroactive monetary relief.

### B.  Qualified Immunity

Montoya moves to dismiss the Complaint on the basis that he is entitled to qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

When analyzing the issue of qualified immunity, the court must first determine whether the plaintiff has sufficiently alleged violation of a statutory or constitutional right. If the plaintiff has asserted such a violation, only then does the court inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999). Accordingly, I now look to

7

the Complaint's allegations to determine if the plaintiff has sufficiently alleged a violation of his constitutional rights.

Claim One alleges that Montoya's "actions are act(s) of retaliation for Plaintiff's civil court actions and civil court judgments totalling [sic] $70,000, against Opal Wilson, in violation of Plaintiff's first Amendment right of access to the court." *Complaint*, p. 7, ¶ 26. Liberally construed, Claim One alleges both a claim for retaliation and a claim for denial of access to the courts.

### 1.   Right to Access the Courts

The right of access to the courts is a fundamental constitutional right. Bounds v. Smith, 430 U.S. 817, 828 (1977). An inmate alleging denial of access to the courts must allege an actual injury. Lewis v. Casey, 518 U.S. 343, 349 (1996). To establish actual injury, the inmate must show that "the denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim." Id. at 356. Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996) (citing Lewis, 518 U.S. at 351).

The defendant asserts that the plaintiff has failed to show a violation of his constitutional right to access the courts because he has not demonstrated actual injury. *Motion*, pp. 9-10. The defendant argues that the plaintiff has not shown an actual injury because "[a] prisoner's constitutional right of access to courts is limited to direct appeals from the convictions for which they were incarcerated or habeas petitions, and to civil rights actions under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights.'" Id. at p. 10.

It is not the prisoner's constitutional right of access to the courts that is limited to direct appeals, habeas petitions, and civil rights actions. Rather, it is the state's obligation to provide assistance that is limited to these types of legal matters:

> A state's affirmative obligation to assure its inmates access to the courts through legal assistance requires it to provide persons trained in the law to aid inmates in the preparation of state or federal petitions for writs of habeas corpus or initial pleadings in civil rights actions challenging conditions of current confinement. Other than habeas corpus or civil rights actions regarding current confinement, a state has no affirmative constitutional obligation to assist inmates in general civil matters. ***Although a state has no affirmative duty to assist an inmate in other civil matters, the state may not erect barriers that impede the right of access of incarcerated persons***.

Carper v. DeLand, 54 F.3d 613, 616-17 (10th Cir. 1995) (internal quotations and citations omitted) (emphasis added).

The Complaint alleges that Montoya placed the plaintiff in punitive segregation for thirty days; seized all of his legal documents and law books; and shut off the plaintiff's telephone privileges to prevent the plaintiff from communicating with his attorneys. Id. at pp. 5-6, ¶ 19. The Complaint further alleges that Montoya's actions prevented the plaintiff from defending Keener's motions for relief from the judgments, resulting in the El Paso County District Court's order relieving Ms. Wilson's estate of the default judgments. Id. at ¶ 22. In other words, the Complaint alleges that Montoya erected barriers that impeded the plaintiff's right of access to the

court in his civil actions. These allegations are sufficient to state a claim for denial of access to the courts.[1]

## 2. Retaliation

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts." Smith v. Mashner, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even where the action taken in retaliation would be otherwise permissible." Id. at 948. An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998). Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

---

[1]On September 8, 2006, Montoya filed a paper entitled "Defendant Montoya's Supplemental Authority in Support of Motion to Dismiss First Amended and Supplemented Prisoner Complaint" [Doc. #201] (the "Supplement"). The Supplement cites to several cases for the proposition that the constitutional right of access to the courts does not include the right to pursue fraudulent or frivolous claims. I do not address the Supplement for many reasons. The Supplement does not set forth any specific argument to link the cases to the allegations of the Complaint. Even if the Supplement had posed a specific argument, I would not address the argument because the plaintiff would not have had an opportunity to respond to it. I also note that there is nothing in the record before me to support a reasonable inference that the plaintiff's civil cases were fraudulent or frivolous. Finally, all of the cases cited in the Supplement were decided well before Montoya filed his motion to dismiss. Thus, they could have been included in the motion to dismiss.

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation.  See Smith, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation");  Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

The defendant asserts that the plaintiff's retaliation claim must fail because none of the alleged retaliatory actions "constitutes a violation of any of Plaintiff's constitutional rights as a matter of law." *Motion*, p. 12, ¶ 2 and pp. 12-20.  However, prison officials cannot retaliate against an inmate for exercising a constitutional right "***even where the action taken in retaliation would be otherwise permissible***."  Smith, 899 F.2d at 948 (emphasis added).

Here, the Complaint alleges that Montoya threatened the plaintiff with punitive segregation if he did not sign over the liens and dismiss the judgments.  *Complaint*, p. 5, ¶ 17.  The Complaint further alleges that Montoya stated "you [Plaintiff] are scum" and "I will do everything and anything in this case to prevent you from receiving a dime from the estate including alleging fraud."  Id. at ¶ 18.  Montoya then placed the plaintiff in punitive segregation for thirty days; seized all of the plaintiff's legal documents and law books; transferred plaintiff to a higher security facility which caused him to lose his job and his privileges; added ten classification

11

points to the plaintiff's custody rating; submitted a false affidavit in the plaintiff's civil cases; caused the plaintiff's relationship with his pastor to end; contacted the Denver Post with misinformation; shopped for a District Attorney to file criminal charges against the plaintiff; and shut off the plaintiff's telephone privileges to prevent the plaintiff from communicating with his attorneys. Id. at pp. 5-6, ¶ 19. These allegations are sufficient to state a claim for retaliation.

Because I have determined that the plaintiff has sufficiently alleged violations of his constitutional rights regarding retaliation and right of access to the courts, I must now inquire whether the rights were clearly established at the time of the violation. Wilson, 526 U.S. at 609; Butler, 172 F.3d at 745.

In 1995, the Tenth Circuit Court of Appeals unequivocally held that although the state does not have an affirmative duty to assist an inmate with civil matters other than direct appeals, petitions for writs of habeas corpus, or civil rights actions challenging conditions of confinement, the state cannot erect barriers to impede an inmate's right of access to the courts for other civil matters. Carper, 54 F.3d at 616-17. In 1990, the circuit court held that prison officials may not retaliate against an inmate for exercising his constitutional right to access the courts, even if the actions would otherwise be permissible. Smith, 899 F.2d at 947. Thus, the plaintiff's constitutional rights were clearly established at the time of Montoya's alleged actions. I respectfully RECOMMEND that the Motion be DENIED insofar as it seeks dismissal of the plaintiff's claims against Montoya based on qualified immunity.

### C. Failure to Allege Physical Injury

Montoya asserts that the claim against him must be dismissed because the plaintiff has failed to allege physical injury as required by the Prisoner Litigation Reform Act ("PLRA"). *Motion*, p. 20. The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).

My review of the Complaint reveals that the plaintiff has not alleged any physical injury. Therefore, the plaintiff's claim against Montoya is barred to the extent it seeks compensatory damages. Section 1997e(e) does not bar recovery of the plaintiff's claims for nominal and punitive damages and declaratory relief. Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks dismissal of the claim against Montoya for compensatory damages for failure to allege physical injury.

## IV.   CONCLUSION

I respectfully RECOMMEND that Defendant Montoya's Motion to Dismiss First Amended and Supplemented Prisoner Complaint be GRANTED IN PART and DENIED IN PART as follows:

1.   GRANTED to the extent it seeks dismissal of all claims against Montoya in his official capacities for retroactive monetary relief;

2.   DENIED insofar as it seeks dismissal of the plaintiff's claims against Montoya based on qualified immunity; and

3.   GRANTED to the extent it seeks dismissal of the claim against Montoya for compensatory damages for failure to allege physical injury.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 2, 2007.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge